

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| JAMES LARRY LYNCH, § | |
| Plaintiff, § | |
| § | |
| vs. § | |
| § | Civil Action No. 3:20-cv-4387-MGL |
| SUMTER COUNTY DISABILITIES AND § | |
| SPECIAL NEEDS BOARD, INC., § | |
| Defendant. § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**
**TO THE EXTENT IT DOES NOT CONTRADICT THIS ORDER,**
**DENYING PLAINTIFF'S REQUEST FOR SPOLIATION INFERENCES,**
**AND GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff James Larry Lynch (Lynch) filed this civil action against Defendant Sumter County Disabilities and Special Needs Board, Inc. (SCDSNB) in the Sumter County Court of Common Pleas. SCDSNB subsequently removed the case to this Court. The Court has jurisdiction over this matter in accordance with 28 U.S.C. § 1331.

Lynch brings ten causes of action against SCDSNB: (1) disparate pay based on race in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e *et seq.*; (2) disparate pay based on race in violation of 42 U.S.C. § 1981; (3) retaliation in violation of Title VII; (4) retaliation in violation of Section 1981; (5) interference with applicable rights in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*; (6) disability discrimination, failure to accommodate, and failure to engage in the interactive process in violation

of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102, *et seq.* (Failure to Accommodate Claim); (7) wrongful termination based on race in violation of Title VII; (8) wrongful termination based on race in violation of Section 1981; (9) wrongful termination in violation of the ADA; and (10) retaliatory termination in violation of the FMLA.

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge recommending the Court grant SCDSNB's motion for summary judgment as to all claims. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

II.     FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge filed the Report on January 6, 2022. Lynch objected on March 24, 2022, and SCDSNB replied on April 7, 2022. The Court directed a supplemental reply from SCDSNB to address additional arguments and evidence raised in Lynch's objections, which it filed on July 15, 2022.

The Court has reviewed the objections, along with Lynch's new arguments and evidence that he filed with his objection. Consequently, as the Court explains below, it will grant in part and deny in part SCDSNB's motion for summary judgment.

The Court incorporates the thorough recitation of the complicated facts of this case set out in the Report and thus will discuss in this Order only those facts necessary to the analysis. The Court will summarize those facts here and set them forth in more detail below.

Lynch, a white employee, alleges SCDSNB paid a Black coworker, Johnny Stone (Stone) more than him, and that SCDSNB retaliated against him for complaining about it. SCDSNB paid Stone $15.50 per hour when he was hired in 2015, whereas Lynch had worked for SCDSNB since

2

1999 and SCDSNB paid him only $11.69 per hour by that time. At the time of Lynch's termination, he earned $13.05 per hour while Stone earned $16.48.

Lynch also contends SCDSNB discriminated against him following a work-related knee injury and failed to properly inform him of his leave rights following the injury. Lynch began leave on October 2, 2018.

On October 3, 2018, SCDSNB insists it sent Lynch a letter notifying him he may qualify for FMLA leave. Lynch maintains he never received this letter. Sandra Strange (Strange), the human resources director, testified she explained in-person the FMLA timeline to Lynch, but failed to provide him with an FMLA designation notice with start and end dates because she had yet to receive the necessary medical documentation.

On December 31, 2018, SCDSNB sent Lynch a letter stating his FMLA leave had expired the previous day, and informing him that SCDSNB was terminating him effective that day. The letter stated he was eligible for rehire if he could provide documentation of his ability to return to work without restrictions. Lynch testifies he never received this letter.

Lynch underwent surgery on February 13, 2019. He received a release to work with a climbing restriction on April 25, 2019. On July 24, 2019, his medical records state that he could return to his routine activities "within the limits imposed by his other chronic medical infirmities." July 24, 2019, Medical Records.

### III.  STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo

determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

IV.     **DISCUSSION**

    *A.     Whether the Court should consider the additional arguments and evidence Lynch presents with his objections*

As an initial matter, Lynch asks the Court to consider the additional evidence that he attaches to his objections and new arguments he failed to present to the Magistrate Judge.  As the Court stated above, it previously issued a text order directing a supplemental reply from SCDSNB addressing the additional evidence and arguments.

In making its de novo review of the Report, the Court is "required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate."  *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) (footnote omitted).

And, the statute governing the assignment of matter to the Magistrate Judge states the Court, upon receiving the Report, "may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  "Because Congress used the permissive term 'may' in connection with the receipt of additional evidence, the question of whether to consider such evidence rests within the sound discretion of the district court."  *Doe v. Chao*, 306 F.3d 170, 183 n.9 (4th Cir. 2002).

Here, although Lynch failed to provide a basis for his late submission of evidence, SCDSNB has now had the opportunity to respond.  The Court will thus consider the new evidence and arguments in resolving the motion for summary judgment to ensure a just result.

### B.     *Whether the Court should make a spoliation inference*

Lynch asks the Court to make a spoliation inference as to several pieces of evidence, which he argues SCDSNB has failed to produce.  SCDSNB insists Lynch failed to object to its discovery responses, and thus has waived his spoliation arguments.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve [evidence] for another's use . . . in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

The Court has broad discretion to determine the appropriate spoliation sanction, but such sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id.* (internal quotation omitted).  The Court must also "find some degree of fault to impose sanctions." *Id.*

Discovery closed in this case on October 19, 2021.  Lynch filed his response to the motion for summary judgment on November 24, 2021, which failed to raise the issue of spoliation.  He has filed no motion to compel at any point during this case.  He requested a spoliation inference for the first time on March 24, 2022, when he objected to the Report.

The Court determines a spoliation sanction is inappropriate here.  Given Lynch's apparent limited efforts to develop the record, the Court finds no basis to impute fault on SCDSNB at this late stage.  There is no evidence SCDSNB destroyed, altered, or failed to preserve any evidence.  The Court will thus deny Lynch's request for spoliation inferences.  It now turns to Lynch's objections, which the Court had divided into five categories.

5

### C.     *Whether the Magistrate Judge improperly considered arguments the parties failed to raise*

First, Lynch complains the Magistrate Judge improperly considered arguments outside those raised in the briefing and asks the Court to deem those arguments as waived. SCDSNB maintains Lynch fails to identify any arguments the Magistrate Judge impermissibly considered.

Lynch fails to identify which arguments the Magistrate Judge considered sua sponte, or even to which claims those supposed arguments relate.

This Court need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

In the absence of specific objections, the Court reviews the Report only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record to accept the recommendation.") (citation omitted).

Because this objection is conclusory, the Court reviews for clear error. Under the principle of party presentation, parties are generally "responsible for advancing the facts and arguments entitling them to relief." *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008) (internal quotation omitted). But, to the extent the Magistrate Judge discussed any arguments the parties had failed to raise, the parties have now had the chance to address them in the objection briefing.

The Court thus finds no clear error, declines to deem any arguments as waived, and will overrule these objections.

   D. *Whether the Magistrate Judge has misconstrued Lynch's burden of proof on the issue of pretext*

  Lynch next insists that the Magistrate Judge applied the "pretext plus" burden of proof that the Supreme Court rejected in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), to his disparate pay, wrongful termination based on race, wrongful termination based on disability, and FMLA retaliation claims.

  Lynch misunderstands the Magistrate Judge's analysis.  The Magistrate Judge stated "[g]enerally, to prove an employer's articulated reason is a pretext for discrimination or retaliation, a plaintiff 'must prove both that the reason was false, and that discrimination was the real reason' for the challenged conduct[.]" Report at 27 (quoting *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)).  But, she acknowledged that under *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* (quoting *Reeves*, 530 U.S. at 148).

  She noted that "to survive summary judgment, a plaintiff must demonstrate 'a genuine dispute of material fact on the question of pretext sufficient to make [the employer's] proffered justification a triable issue.'" *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)).

  After explaining the relevant legal standard, the Magistrate Judge then applied the *Reeves* standard—not pretext plus—to determine that Lynch had failed to establish a genuine issue of material fact as to pretext for each of these claims.  She made no requirement that Lynch offer direct evidence of intent or racial animus.  The Court will thus overrule these objections as well.

> E. *Whether Lynch has demonstrated a genuine issue of material fact regarding pretext for his disparate pay claims*

Lynch insists he can establish a genuine issue of material fact regarding pretext as to his disparate pay claim by presenting evidence that SCDSNB's proffered reasons "are shifting, inconsistent, contradictory, untrue and not credible." Objections at 4. SCDSNB maintains Lynch has failed to present evidence that its proffered legitimate reasons for the disparity were pretext.

First, Lynch contends SCDSNB's proffered reasons for the pay disparity conflicted with each other. For example, he avouches Thoyd Warren (Warren), then-executive director, first stated finance allocated the pay for Stone's position at the time of listing. Then, later in the same deposition, he stated Stone's pay was also based on his experience. The finance director, Robin Hickman (Hickman), also testified Warren set the pay for Stone's position based on information provided by finance. And, Strange testified Stone's pay was determined based on his experience.

Each of these explanations, are, according to Lynch, contradicted by SCDSNB's position statement to the EEOC, made in 2016. In that statement, SCDSNB contended it offered Stone a supervisor salary for the assistant position because it had originally been posted as a supervisor position. The statement also avouches that Stone himself suggested SCDSNB would be better served with him in an assistant position.

Yet, each of these supposedly conflicting rationales are reconcilable. That SCDSNB offered Stone the Supervisor salary is consistent with his evident qualifications and experience. And, whether finance allocated the funds or provided guidance on salary, it is consistent that Stone's qualifications were also considered in determining his rate of pay.

Warren's explanation to Lynch himself of Stone's higher pay is instructive. When Lynch confronted Warren about the disparity, Warren told him SCDSNB needed to "to pay for the workforce that's out there." Lynch Deposition at 33–34. In other words, to attract a candidate of

8

sufficient caliber in 2015, SCDSNB needed to offer a higher wage. Thus, both qualifications and finance's allotment worked in tandem to set the wage for the appropriate candidate. Notably, SCDSNB had likewise hired Lynch at the salary he had asked for on his application.

Next, Lynch points out evidence that his direct supervisors believed him more experienced and more qualified than Stone, which contradicts the testimony of Warren and Strange.

For example, Eldridge Herrin (Herrin), both Stone and Lynch's direct supervisor, testified that Lynch had more experience and ability than Stone. And, even though Warren and Strange testified Stone's experience performing HUD inspections entitled him to higher pay, Herrin explained that Lynch—not Stone—actually performed the HUD inspections.

Herrin also testified Lynch handled fire inspections, had more carpentry experience, more experience repairing washers and dryers, was more "nimble," and had longstanding relationships with contractors and vendors in the community. Eldridge Deposition at 42. Yet, Warren testified that Stone could do "a lot of maintenance and repairs himself, not contracting out on jobs, had a proven track record, great references," setting him apart from Lynch. Warren Deposition at 17–18. Strange also testified that his qualifications were higher and he had helpful prior experience.

Overall, Lynch's evidence fails to show that SCDSNB "overplayed" Stone's qualifications as known at the time of his hiring. *See* Objections at 6 (quoting *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 647 (4th Cir. 2002)). Evidence of Lynch's own strengths fails to create a genuine issue of material fact.

Further, Lynch posits he has presented evidence SCDSNB's budgetary concerns were pretext. The Report determines that "although [Lynch] has attempted to offer evidence that there was money in the budget for his pay raise, [Lynch] has failed to show the referenced money could have been allocated to his department." Report at 30. Lynch insists the Magistrate Judge relied

9

on a hearsay statement from Herrin that budgetary concerns prevented Lynch from receiving a raise.  Even discounting this statement, however, SCDSNB provides ample evidence of the limited flexibility in the budget to determine salary and raises.

Nevertheless, Lynch avers the executive director could have found discretionary funds in the budget had he determined an employee's salary was unfair.  Lynch also argues each denial of his raise request was immediate, meaning Warren and Shawn Keith (Keith), the new executive director, never checked the budget to see if it permitted parity.  And, Hickman fails to recall either Warren or Keith consulting with her about a raise for Lynch.

But, the evidence shows merit increases were generally unavailable because SCDSNB raises are generally controlled by the state legislature.  That SCDSNB refused to use its limited, nonrecurring, discretionary funds fails to suggest pretext.  And, the time Herrin requested a raise for Lynch, he also made the request on behalf of the entire department, suggesting race failed to factor into the denial.

Finally, Lynch posits that because his replacement, a Black man, was paid more than him, it undermines the contention that budgetary issues prevented SCDSNB from increasing his pay.  But, his replacement was still paid less than Stone, and only $0.95 per hour more than Lynch's pay at the time of termination.  This reinforces SCDSNB's arguments that factors other than race, such as "to pay for the workforce that's out there[,]" Lynch Deposition at 33–34, determine what wages SCDSNB pays its newly-hired employees.  That Lynch had filed a charge with the EEOC, even if Warren knew about it, fails to undermine these reasons.

For all these reasons, the Court will also overrule Lynch's objections related to this section and will grant summary judgment as to Lynch's disparate pay causes of action.

> **F.     Whether Lynch has demonstrated a genuine issue of material fact regarding causation as to race retaliation causes of action**

Lynch also maintains the Magistrate Judge erred in recommending summary judgment on his retaliation causes of action because his supervisors knew he had filed an EEOC charge, SCDSNB's refusal to correct his disparate pay constituted a material adverse action, and there is evidence SCDSNB terminated his employment because of his complaints regarding racial discrimination.  SCDSNB, on the other hand, points to the significant period of time between Lynch's race discrimination charge and his termination, contending "[t]he Magistrate Judge correctly concluded that [Lynch] did not establish a causal connection between his EEO activity and his termination nearly 33 months later."  Reply at 4.

Lynch filed his charge on April 10, 2016, but was not terminated until December 31, 2018.  Even if SCDSNB knew about Lynch's charge and failed to investigate his allegations, as Lynch insists, the significant passage of time between the charge and the alleged adverse employment action, belies causation.  Put simply, all Lynch shows is he made a single complaint of discrimination and, at some point in the future, he was terminated.  The lack of response to the charge, or even acknowledgment, by SCDSNB merely underscores this disconnect.

This Court agrees there is no genuine issue of material fact as to causation.  *See Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds by Univ. of Tex. Sw. Md. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("A causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." (internal citations omitted)).

And, Lynch has failed to present any other evidence that creates a triable issue as to causation.  *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of

11

retaliation."). He insists the Hickman falsely accused him of theft, but that "accusation" was directed at Herrin and Stone as well. It therefore fails to suggest causation.

Lynch has thus failed to establish a prima facie case as to his race retaliation claims. Therefore, the Court will thus grant summary judgment as Lynch's retaliation causes of action. The Court will also overrule Lynch's objections related to this section and need not consider Lynch's other arguments regarding these claims. *See Karsten v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### G. Whether Lynch has demonstrated a genuine issue of material fact regarding his FMLA interference claim

Lynch insists he has presented evidence that he would have acted differently had he been notified of his FMLA rights. Specifically, he claims he would have chosen surgery sooner, rather than first attempting physical therapy, had he known he had only twelve weeks to return to work. SCDSNB failed to directly respond to this argument in its reply or supplemental reply, although it emphasizes the evidence that it provided Lynch a designation of leave notice.

The Magistrate Judge lacked the benefit of this argument—or Lynch's declaration supporting it—when considering the motion for summary judgment. The Court thus considers whether Lynch's additional argument and evidence establishes a genuine issue of material fact as to this claim.

As the Magistrate Judge aptly explained, "[t]o make out an interference claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm."

Report at 49 (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015)) (internal quotation marks omitted).

The parties do not seem to dispute that Lynch was entitled to a FMLA benefit. And, although SCDSNB insists it provided Lynch with the requisite FMLA notices, Lynch disputes that fact, claiming he never received the information. That is a question of fact best left to a jury. Accordingly, the issue for the Court is whether there is evidence to support that the alleged interference, if proven, caused Lynch harm.

Failure to provide notice can constitute an interference claim only if the employee shows that she was prejudiced by the lack of notice. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (noting that the FMLA "provides no relief unless the employee has been prejudiced by the violation"). "Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016).

Lynch presents new evidence that the time from Lynch's surgery until his release to work, with only a climbing restriction, was seventy-one days, or just over ten weeks. This is within the twelve weeks allotted under the FMLA. The Court declines to use, as SCDSNB requests, July 24, 2019—the date Lynch was cleared without restrictions—to calculate his recovery, because Lynch has presented evidence climbing was unrequired for him to perform his essential job functions.

It is thus possible Lynch could have—and would have—structured his leave to allow him to return to work within the allotted time-period by choosing to forego physical therapy and scheduling his surgery much earlier. Therefore, there is a genuine issue of material fact that

SCDSNB's interference with his FMLA benefits—namely the alleged failure to advise him he was on FMLA leave and of his FMLA rights—caused Lynch harm.

Because Lynch has established a genuine issue of material fact as to each element of his FMLA interference claim, the Court will decline to grant summary judgment as to this claim. Because this claim may impact the remaining causes of action, the Court will also decline to grant summary judgment as to those claims as well, with leave to renew. Any renewed motion shall take into consideration the Court's discussion in this Order and be filed no later than **September 30, 2022**.

## V.     CONCLUSION

After a thorough review of the Report and the record in this case under the standard set forth above, the Court overrules the objections as detailed above, adopts the Report to the extent it does not contradict this Order, and incorporates it herein. Therefore, it is the judgment of the Court Lynch's request for spoliation inferences is **DENIED**; and SCDSNB's motion for summary judgment is **GRANTED** as to Lynch's Title VII and Section 1981 disparate pay and Title VII and Section 1981 retaliation claims and **DENIED** as to his remaining claims.

**IT IS SO ORDERED**.

Signed this 1st day of September 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE